Robert B. KENDRICK, Jr., Appellant,

v.

COMMISSION OF ZOOLOGICAL
SUBDISTRICT et al., Appellees.

Nos. 76–2120, 77–1011.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1977.

Decided Nov. 14, 1977.

Michael W. Forster, St. Louis, Mo., on brief for appellant.

D. J. Sullivan, St. Louis, Mo. for appellees; Timothy L. Stalnaker, St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON, Circuit Judge, and MARKEY, Chief Judge.*

VAN OOSTERHOUT, Senior Circuit Judge.

This is a timely appeal by the plaintiff, in forma pauperis, from final judgment dismissing his complaint brought under 42 U.S.C. § 2000e et seq. and § 1983 alleging plaintiff was discharged as a zoo employee because of his race. The trial court filed a memorandum opinion, reported at 427 F.Supp. 497 (E.D.Mo.1976), setting forth the basis for the dismissal and pursuant thereto entered an order dismissing the complaint, each party bearing its own costs.

Defendants filed a cross appeal on the basis that the order of dismissal providing that each party bear its own costs in effect denied defendants' prayer that they be awarded a reasonable attorney fee.

The defendants in this action are the Commission of Zoological Subdivision (hereinafter referred to as the Zoo), a municipal board established for the administration of the St. Louis Zoological Park pursuant to Missouri law, Thomas McGuire, chairman of the Commission, and Robert T. Briggs, director of the Zoo.

Plaintiff is a black male employed by the Zoo on April 15, 1973. His employment terminated on October 24, 1973, by letter from defendant Briggs which reads:

This is to inform you that your employment at the Zoo has been terminated effective at the end of your period of suspension. I must note that your action in admitting strangers to the elephant house kitchen for purposes of intimidating or injuring fellow employees is intolerable. You will be paid for all accrued compensatory time and vacation time.

The employment termination was based on an attack made by plaintiff's cousin Brittney, accompanied by three other blacks, upon plaintiff's fellow employee Tim Cooney which occurred in the elephant house kitchen on October 21, 1973. Plaintiff led this group into the kitchen. The kitchen was not open to the public. The record discloses that visitors did occasionally enter the kitchen.

Brittney, in plaintiff's presence, severely beat and kicked Cooney numerous times. Cooney was taken to the hospital for treatment of his injuries. The Zoo officials were notified and the police were called and conducted an investigation.

Plaintiff was called before director Briggs on the morning of October 22. Employees who had witnessed the encounter were examined in plaintiff's presence. Plaintiff was given a full opportunity to explain his position. Immediately after the hearing, plaintiff was suspended. After further investigation the termination letter, *supra*, was mailed to him.

Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging that he was discharged because of his race. The EEOC investigator who investigated the charge determined:

There is no evidence to imply or give probable cause to Charging Party's allegation that he was discharged because of his race. Even Charging Party, in his affidavit, fails to mention or indicate race as a factor in his discharge or in the series of events leading to his discharge. There is no precedent for comparative data. Also, there is no evidence to support the charge that race was a factor in Charging Party's discharge, nor is any violation of Title VII in evidence.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

The Department of Justice issued a "Notice of Right to Sue" on March 5, 1976. On June 4, plaintiff filed the right to sue letter with the court. Leave to file in forma pauperis was granted and the complaint was filed on July 7, 1976.

This case was tried to the court without a jury. The trial court in its reported opinion made detailed findings of fact, which include the following:

On October 20, 1973, plaintiff and another Zoo employee, Tim Cooney, had a disagreement over the sale of an automobile by Cooney to plaintiff. On October 21, 1973, plaintiff related the details of this disagreement to his wife, in the presence of plaintiff's cousin, Robert Brittney. Later that afternoon, Brittney and several of his friends went to the Zoo, specifically the Elephant House where both plaintiff and Cooney worked. Brittney and his friends entered the Elephant House kitchen, an area which is restricted to Zoo employees, with plaintiff. Although plaintiff was told by Rick Gaida, a co-employee, that Brittney and his friends were not supposed to be in the kitchen area, plaintiff did not attempt to get them to leave. Brittney and his friends immediately began to fight with Cooney, which fight included punches and kicks. Plaintiff did not actually participate in the fighting but the Court finds plaintiff was responsible for the presence of Brittney and his friends at the Zoo and knew that problems, although not necessarily a beating, would result.

\* \* \* \* \* \*

On October 24, 1973, plaintiff was terminated. This decision was made by defendant Briggs alone. The Court finds that this decision was not based, in whole or in part, upon plaintiff's race but rather the decision to discharge plaintiff was made because Briggs determined that plaintiff was involved in bringing outsiders into a restricted area of the Zoo for the purposes of intimidating or injuring Zoo employees.

The evidence established that other white employees had let visitors into restricted areas and that other white employees had been involved in fights with co-employees. There had not been, however, any prior incidents in which Zoo employees acted in the manner in which plaintiff acted herein.

\* \* \* \* \* \*

As of March 31, 1974, the Zoo employed 126 white individuals and 23 black individuals or 15.4% black employees. The evidence established that the Zoo drew most of its employees from St. Louis City and St. Louis County. The racial statistics for those areas, as reported by the United States Department of Commerce, Bureau of Census for 1970 indicate that the racial composition of the City of St. Louis and St. Louis County was 19% black.

427 F.Supp. at 498–99.

Upon the basis of such findings, the court determined:

The Court has found that plaintiff was not discharged, in whole or in part, because of his race but that the decision was based on plaintiff's involvement in the fight between his cousin and another Zoo employee. Under these circumstances, plaintiff's claim must fail. Cf., *Christian v. General Motors Corporation*, 341 F.Supp. 1207 (E.D.Mo.1972), *aff'd*, 475 F.2d 1407 (8th Cir. 1973).

The statistical evidence adduced does not warrant a different conclusion. At the outset, the Court notes that the employment statistics for blacks at the Zoo does not vary that much from the general population statistics. Moreover, the number of employees at the Zoo is small and statistical evidence under such circumstances is of little value. *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409 (8th Cir. 1975).

*Id.* at 499–500.

■ Findings of fact made by a trial court in a case submitted to the court without a jury shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52, Fed.R.Civ.P. *United States v. National Ass'n of Real Estate Boards*, 339 U.S.

485, 495–96, 90 S.Ct. 711, 94 L.Ed. 1007 (1950); *St. Louis Typographical Union No. 8 v. Herald Co.*, 402 F.2d 553, 557 (8th Cir. 1968); *Pendergrass v. New York Life Ins. Co.*, 181 F.2d 136, 138 (8th Cir. 1950).

Rule IX B(4) of defendants' employee manual provides:

> B. *Discharge.* Employees committing any of the acts in this section will be subject to immediate discharge:
>
> (4) Fighting or inciting a fight.

Substantial evidence supports the findings of the trial court that the plaintiff incited the fight. Plaintiff, during his lunch period at his home on the day of the fight, had discussed his quarrel with Tim Cooney over his purchase of a car from Cooney with his cousin and neighbor Brittney. In the course of the discussion he described Cooney as having red hair and a red beard. Plaintiff returned to his work at the Zoo about noon. Shortly after 2 p.m. that day Brittney and three other blacks arrived at the Elephant House at the Zoo and were led by plaintiff into the Elephant House kitchen where Cooney worked. There is evidence that plaintiff pointed out Tim. In any event, Tim had been described to Brittney during the lunch hour conversation and Brittney had no difficulty in identifying Cooney. Brittney immediately approached Cooney and after a heated conversation beat him and kicked him. Cooney returned no blows. Authorities were notified of the fight and the police were summoned and investigated.

■ Plaintiff's principal contention in support of his claim of racial discharge is that Cooney and Throm, a white employee, got into a fight several months after plaintiff's discharge and that they were not discharged. In this incident, Throm was pushed against the wall by an elephant which Throm thought was negligently handled, and on the spur of the moment Throm hit Cooney one mild blow, inflicting no serious injury. Shortly after the incident Throm and Cooney agreed that it was a silly thing to do. They were friends before and friends after the event. Both were long-time employees. Throm was not discharged but was placed on probation. We agree with the trial court's view that the Throm-Cooney fracas was not comparable to the event leading to plaintiff's discharge. No outsiders were brought in, the fight was minimal resulting in no injuries and the fight led to no hard feelings between the participants.

■ Certainly an employer has some discretion to consider all the facts and determine whether the discharge is an appropriate remedy or whether a milder punishment would be more appropriate. *See Bishop v. Wood*, 426 U.S. 341, 349–350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). We note that Rule IX B authorizes a discharge for fighting or inciting a fight but does not compel a discharge for such conduct. Moreover, as found by the trial court, racial considerations had nothing to do with plaintiff's discharge.

■ Plaintiff contends that the Zoo's practice of marking the application of minority members for a position with the letter "M" establishes a claim of racial discrimination. Director Briggs testified that the coding program was used to further the Zoo's affirmative action policy of hiring and promoting minority applicants. No evidence was introduced that this coding had at any time been used to discriminate against minority applicants and employees. As heretofore pointed out, the court upon the basis of its findings, supported by the evidence, determined that the employment statistics of blacks at the Zoo did not vary substantially from the population statistics and afforded no basis for a finding of racial discrimination. The court's determination that the plaintiff's discharge was not based in whole or in part on race is supported by substantial evidence and is not clearly erroneous.

We affirm the judgment on plaintiff's appeal.

■ Defendants' cross appeal raises the issue whether the court erred or abused its discretion in denying defendants attorney's fees.

Forty-two U.S.C. § 2000e–5(k) provides in pertinent part:

> In any action or proceeding under this subchapter the court, in its discretion,

may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs . . . .

The allowance of attorney's fees to a successful defendant by the terms of the statute rests in the discretion of the trial court. We do not consider plaintiff's claim to be completely frivolous. Plaintiff's action is brought in forma pauperis; it is doubtful a judgment for attorney's fees would be of substantial value to the defendants, and it would likely place a heavy burden on the plaintiff.

We are satisfied the court did not abuse its discretion in denying defendants attorney's fees. *See Mosby v. Webster College,* 563 F.2d 901 (8th Cir. 1977).

The judgment to the extent that it denies defendants attorney's fees is affirmed.

Each party shall bear its own costs upon appeal.

Affirmed on plaintiff's appeal and defendants' cross appeal.