**Harold L. OSBORNE, Appellant,**

v.

**Max CLELAND, Appellee.**

**No. 79–1504.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 6, 1979.

Decided April 28, 1980.

---

P. A. Hollingsworth, Little Rock, Ark., (argued), and Janet Pulliam, Little Rock, Ark., on brief, for appellant.

Doug Chavis, III, Asst. U. S. Atty., Little Rock, Ark., (argued), and W. H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief, for appellee.

Before GIBSON, Chief Judge,* and LAY and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

Harold L. Osborne was hired by the Veterans Administration Hospital in North Little Rock, Arkansas as a nursing assistant in May 1973.[1] The appointment affidavit or "Declaration of Appointee" he was required to complete upon his hiring included the following question: "Since the date you signed your qualifications statement (or application) for this employment, have you been convicted of a offense against the law or forfeited collateral, . . .?"[2] Osborne answered "no." On April 10, 1974, Osborne was informed he was being terminated because hospital authorities had discovered he forfeited collateral for the offense of procuring after the date of his application and before he filled out the appointment affidavit.

Osborne worked in the hospital's psychiatric ward until he was terminated. Following administrative appeals he filed this lawsuit, alleging his termination was due to racial discrimination and seeking relief under section 717 of title VII of the Civil Rights Act of 1964, *as amended by* the Equal Employment Opportunity Act of 1972, 42 U.S.C.A. § 2000e–16.[3]

At trial Osborne testified he had unintentionally answered "no" to the question because he was thinking of felony convictions. He said he thought race was the reason for his discharge and for not being promoted to the next higher employment grade. His primary evidence was a chart prepared by the hospital that showed at least 14 other employees had falsified their applications, 13 of which had falsified prior convictions. Of the 14, 8 were black and 6 were white. None were terminated by the hospital. A statistician called by Osborne testified that based upon his analysis of the chart, the probability of a white employee being discharged for falsification was zero. He also testified that there was a 98% chance that discharge of one out of nine (the eight

---

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

1. Osborne had been employed previously by the hospital as a nursing aide from 1963 to 1967.

2. Osborne's application for employment was submitted on December 15, 1971.

3. The suit was begun as a class action, but the request for class certification was later withdrawn. Osborne sought reinstatement with back pay, an injunction against further discrimination, counsel fees and costs.

others plus Osborne) black persons charged with falsification was not due to chance. In addition, Osborne introduced statistical evidence showing that although the hospital employed blacks in excess of their distribution in the general population, they were almost entirely clustered in the lower employment grades of one through five (Osborne was hired as a GS–2).

The hospital's assistant personnel officer, Ernie Frint, testified the United States Civil Service Commission notified the hospital on March 5, 1973, of Osborne's prior arrest and forfeiture. The matter was referred to the Chief Nurse, who decided Osborne should be removed. Frint concurred in the decision and informed the Hospital Director and Chief of Staff. Factors the hospital weighed in its decision to terminate Osborne were: Seriousness of the conviction, when it occurred, and how it would relate to job performance. Frint testified the reason for Osborne's discharge was falsification of his appointment affidavit. He also said that the bearing of the offense of sexual procurement on Osborne's suitability for his job, care of psychiatric patients, was also a determinative factor. Frint testified the nature of the offense was such that, if it had been revealed, Osborne would not have been considered suitable for employment as a psychiatric nursing assistant. In addition, a supervisory nursing employee and the hospital's Chief of Nursing Service testified that the offense of sexual procurement in their judgment made Osborne unsuited for patient care in psychiatric wards.[4]

Following a two day trial, the district court held Osborne's discharge did not violate title VII and entered judgment dismissing the complaint with prejudice. In its memorandum opinion, the court stated Osborne had made out a prima facie case. It also found, however, upon analysis of the testimony and statistical proof, that the hospital's articulated reason, falsification of the appointment affidavit, was legitimate and nondiscriminatory. The court was not persuaded that the reason was pretextual, and believed Frint's testimony that race was not part of his motive.

On appeal, Osborne urges the weight of evidence showed falsification was not the reason for his discharge, but rather a pretext. He argues the sequence of the chart's figures is important: Three white employees who falsified applications were not terminated, and no employee was terminated for falsification until Osborne, a black, was fired. He contends statistics offered to show racial discrimination generally in the hospital's employment practices buttress his individual claim. Emphasis on the nature of the offense for which he was arrested and forfeited bond is a pretext for racial animus, he claims. He points out arrest inquiries and discharges for falsification of arrest records have a disproportionate impact on black job applicants and employees.

The hospital argues it established Osborne was discharged because he was not suitable to care for psychiatric patients, as shown in falsification of his affidavit by concealing bond forfeiture for the offense of procuring. It contends evidence that eight black and six white employees who falsified were not terminated showed absence of racial animus. No pattern of firing all who falsify, which could conceivably have a racially disproportionate impact, was shown. Nor, it asserts, did the evidence show disparate treatment by race, i. e., that blacks who falsified were terminated while whites were not.

■ We agree with the district court that Osborne made out a prima facie case of

---

4. Frint also testified that Osborne could not have had an annual evaluation and been considered for promotion to a higher grade until he had been employed at a GS–2 level for a year. Osborne did not apply for a supervisory position, but only for the position of nursing assistant. He did not complain, except informally and orally two weeks prior to his termination, about his GS–2 grade classification. Since he did not complain administratively about his wage classification, the claim was not exhausted. Since he did not apply for a supervisory position, the statistical evidence on black representation in supervisory positions did not bear on his individual claim. The district court correctly found Osborne failed to show discrimination by failure to promote.

racially discriminatory discharge under the standards of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Osborne is black, he was demonstrably capable of performing his employment duties, he was discharged, and his employer sought people with his qualifications to fill his former job after his discharge. Osborne thus raised an inference that racial discrimination motivated the discharge. *See Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949; *Kirby v. Colony Furniture Co.*, 613 F.2d 696 at 702 (8th Cir. 1980).

▇ We also agree that the hospital dispelled the inference by articulating a legitimate and nondiscriminatory reason. *See Furnco*, 438 U.S. at 577–78, 98 S.Ct. at 2949–50; *Kirby*, at 702–703. The hospital showed that it told Osborne his discharge was for falsification, and that Osborne had in fact falsified his appointment affidavit. It showed the hospital considered the offense and its seriousness, *i. e.*, the fact falsified, in addition to the act of falsification itself whenever an employee's falsification was revealed. The record here demonstrates that in the judgment of several supervisory and administrative hospital employees, the falsification, considered with the nature of the offense concealed, made Osborne's suitability for psychiatric patient care questionable enough to warrant discharge.

Such proof does not necessarily end the inquiry. Osborne had the opportunity to show the falsification justification was merely a pretext for discrimination. *See Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950; *Kirby*, at 703. Evidence relevant to pretext could include: (1) Application of the criterion to employees of different races; (2) the hospital's general practice and policies concerning employment of racial minorities; and (3) the hospital's treatment of Osborne during his employment. *See McDonnell Douglas Corp.*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

▇ While Osborne showed the hospital acted in a manner inconsistent with its treatment of others who falsified, he did not show that the falsification criterion was applied disparately to blacks. The list of other employees who had falsified their applications did not add substantial proof of racial discrimination to Osborne's prima facie case. Osborne's statistician could only testify that, given the fact no one but Osborne had ever been terminated for falsification, there was a 98% chance his discharge was not due to pure chance, but some other factor. Obviously, the factor could be race or could be the hospital administration's judgment of the seriousness of the offense in light of Osborne's duties. The statistician testified the statistics did not indicate the former was more likely than the latter. Although we note Osborne was the first person and the only black discharged, eight other blacks who concealed convictions, some of which were serious, were not discharged. The district court's decision to give greater weight to the hospital's decision to retain eight other black employees is not clearly erroneous. Evidence of general pattern or practice can buttress an individual's claim of discriminatory motive. *King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir. 1975) (quoting *Terrell v. Feldstein Co.*, 468 F.2d 910, 911 (5th Cir. 1972)); *Miller v. Poretsky*, 595 F.2d 780, 792 (D.C.Cir.1978). However, here the district court could find this statistical evidence did not show racially discriminatory practice generally, and that therefore the evidence could not support Osborne's specific claim of discriminatory motive. *Cf. Jimerson v. Kisco Co.*, 542 F.2d 1008, 1010 (8th Cir. 1976) (when no showing blacks excluded for falsification of arrest records at higher rate than whites, disproportionate impact not shown). When race is not shown to have been a factor, and discharge is an action authorized but not compelled, a title VII plaintiff does not meet the burden of proof by showing other employees who acted similarly were not discharged. *Kendrick v. Commission of Zoological Subdistrict*, 565 F.2d 524, 527 (8th Cir. 1977). "[A]n employer has some discretion to consider all the facts and determine

whether the discharge is an appropriate remedy or whether a milder punishment would be more appropriate." *Id.*

Nor did Osborne's proof of the hospital's general minority employment practices and policies show pretext. He did show that in higher grades or supervisory positions, at least with reference to the general population, disproportionately few minorities are employed. Such evidence is relevant to racially discriminatory motive. Without additional evidence, however, the connection between the showing and Osborne's discharge from a lower grade, nonsupervisory position is too attenuated to be probative of his specific claim of discriminatory motivation. Moreover, in determining motivation, the district court could have correctly considered the hospital's evidence of compliance with affirmative action plans that addressed this problem.

Finally, Osborne did not prove pretext by testimony or other evidence that the hospital had previously acted toward him in a manner that indicated racial animus.

We conclude Osborne failed to present any substantial evidence that the hospital's reason was a pretext for racially discriminatory motivation. The district court's ultimate finding was partially based on its determination that Frint's testimony that race was not a factor was credible. After careful review of the record, we hold the district court's finding of no racial discrimination is supported by substantial evidence and is not clearly erroneous.

Osborne argues rather persuasively that the hospital's concern with the nature of his offense was excessive, arbitrary, and based on his supervisors' subjective morality standards. Without proof that the real motive was racial discrimination, the inconsistent and harsh character of the hospital's action, although it causes us concern, does not suffice to show violation of title VII.[5] We agree with the district court's statement:

Plaintiff argues persuasively that his involvement with procuring was isolated and insignificant. . . . The action of the V.A. in discharging him for concealing this incident may seem harsh. It may also be inconsistent with other personnel actions reflected in this record. The Court, however, is without power in this action to review the merits of the employment action taken by defendant. The question before the Court is only whether the discharge of plaintiff violated Title VII of the Civil Rights Act of 1964, and the Court holds that it did not.

Judgment affirmed.

---

5. Osborne's prima facie showing is not "the equivalent of an ultimate finding by the trier of fact that the . . . rejection . . . was racially motivated." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 2950, 57 N.E.2d 957 (1978). The showing

did permit an inference of racial discrimination to arise, but substantial evidence credited by the district court dispelled that inference. We would exceed our power of review, limited as it is by the clearly erroneous standard, if we were to do anything but affirm the judgment below.