**Mary Josephine WOOD, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

No. 80–1028.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1980.

Decided Jan. 19, 1981.

---

James A. Daugherty, St. Louis, Mo. (Leo E. Eickhoff, Jr., Jack C. Lorenz, St. Louis, Mo., on brief), for appellee.

Anthony L. Anderson, Anderson, Preuss & Zwibelman, Clayton, Mo., for appellant.

Before STEPHENSON and HENLEY, Circuit Judges, and HUNTER,* District Judge.

* The Honorable Elmo B. Hunter, United States District Judge, Chief Judge for the Western District of Missouri, sitting by designation.

ELMO B. HUNTER, District Judge.

Mary Josephine Wood appeals from the judgment of the district court [1] which found that Southwestern Bell Telephone Company (hereinafter Southwestern Bell), appellee, did not discriminate against appellant due to her sex and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. We affirm.

On July 3, 1975, appellant filed her complaint against Southwestern Bell alleging sex discrimination. Summary judgment was granted by the district court [2] in favor of Southwestern Bell, but that ruling was reversed by this Court and the case was remanded to the district court.[3] The matter was tried to the district court. A memorandum opinion was filed and judgment entered on behalf of Southwestern Bell on September 18, 1979. This appeal followed.

Appellant alleges four points of error. First, the district court erred by finding Southwestern Bell had not discriminated against appellant in her application for, training in, and demotion from a deskman's position.[4] Second, the district court erred by finding that the appellant was not the subject of harassment or reprisal in violation of 42 U.S.C. § 2000e–3. Third, it was error to find that appellant had not received disparate compensation in violation of 42 U.S.C. § 2000e–2(a)(1). And finally, the district court erred in failing to exclude witnesses from the courtroom after the trial to the court had begun.

## I.

Appellant has a distinguished service background with Southwestern Bell. She has been with the company for 30 years and currently remains in their employ. She began with the company in 1950 as a junior clerk and was promoted in 1951, 1952, 1958, and 1965. Her promotion in 1965 was to the management position of personnel records analyst. In 1967, after a leave of absence, she returned to the non-management position of repair clerk.

Southwestern Bell is organized into various intra-company divisions. The plant division is divided into craft and non-craft positions. Prior to 1968 appellant's employment at Southwestern Bell had generally been in non-craft positions. In 1968 she made her first application for promotion to a craft position. After the form of her application had been approved by her union it was properly accepted by the company. After passing a craft test, required of all persons entering craft positions, she was awarded the job of deskman on the test board at the St. Louis midtown office of Southwestern Bell.

The job of deskman involved the operation of local testing facilities to test communication circuits and associated equipment. Appellant's responsibilities included analyzing trouble spots on equipment, dispatching repair forces, and locating and clearing communication problems between the company's central office and the customer's premises. Appellant was also responsible for the preparation and maintenance of various records and reports relating to these duties. In short, the position of deskman, as the district court noted, required the use of rather unique analytical abilities.

Appellant remained at the position of deskman from December 1, 1968, until November 7, 1969, at which time she was removed and returned to her former position as a repair clerk. Thereafter, appellant continued to make bids for a deskman's position. These bids were denied and appellant filed her discrimination charge with the Equal Employment Opportunity Commission (EEOC) on April 7, 1970.

1. The Honorable H. Kenneth Wangelin, United States District Judge, Eastern District of Missouri.

2. 442 F.Supp. 41 (E.D.Mo.1977).

3. 580 F.2d 239 (8th Cir. 1978).

4. Appellant initially utilized the term "deskman" in her complaint. Throughout the course of this litigation that term has consistently been used to describe the employment position in question. We will continue to use the term for purposes of this appeal.

Appellant began the job as a deskman along with four other individuals who were also new to that position. This group, including appellant, consisted of two women and three men. Appellant initially received on the job training from other deskmen. After two months of such training a chief deskman, a management employee, was assigned to train her in the proper techniques and procedures involved in the position.

During appellant's first few months in the position of deskman her supervisors determined that she would be subject to a probationary period due to the unsatisfactory progress she was making in learning her new position. Her supervisors noted that she had difficulty in correctly analyzing the source of equipment trouble spots and in determining what corrective measures were necessary. Formal appraisals of appellant's progress were made on at least four separate occasions. Finally, on October 3, 1969, a formal appraisal by appellant's supervisors indicated that she had made no improvement in her overall job performance and that her technical abilities were unsatisfactory. Appellant also received a poor appraisement of the productivity and quality of her work. After this final appraisal, it was recommended that she be assigned to a position more consistent with her capabilities.

## II.

Appellant's first two claims of error may be reviewed together. First, she argues that the district court erred by finding that she was not discriminated against in her application for, training in and demotion from a deskman's job. Second, she asserts the district court erred by finding that she was not the victim of harassment and reprisal as a result of the filing of her EEOC claim.

■ The complainant in a Title VII case carries the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Should the complainant establish a prima facie case of discrimination:

the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as [sex] . . . To dispel the adverse inference from a prima facie showing [of disparate treatment] the employer need only "articulate some legitimate, non-discriminatory reason for the employee's [treatment]."

*Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) quoting *McDonnell Douglas Corp. v. Green, supra. See also Board of Trustees v. Sweeny,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). The complainant is then entitled to rebut proof of legitimate, non-discriminatory reasons for the employee's treatment by "introduc[ing] evidence that the proferred justification is merely a pretext for discrimination." *Furnco Construction Corp. v. Waters, supra,* 438 U.S. at 578, 98 S.Ct. at 2950; *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825. This Court has recognized this three tiered approach in many of its recent decisions. *McCosh v. City of Grand Forks,* 628 F.2d 1058, 1062 (8th Cir. 1980); *Reeb v. Marshall,* 626 F.2d 43, 45 (8th Cir. 1980); *Ligons v. Bechtel Power Corporation,* 625 F.2d 771, 773 (8th Cir. 1980); *Coleman v. Missouri Pacific Railroad Co.,* 622 F.2d 408, 410 (8th Cir. 1980); *Osborne v. Cleland,* 620 F.2d 195, 198 (8th Cir. 1980); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980); *Kirby v. Colony Furniture Co.,* 613 F.2d 696, 702 (8th Cir. 1980).

From the district court's memorandum opinion it is unclear whether the court's finding for Southwestern Bell was based on appellant's failure to establish a prima facie case or her failure to carry the ultimate burden of persuasion that she was discriminated against due to her sex. For purposes of this appeal we will assume that appellant made out a prima facie case of discrimination at the trial level.

■ It is clear from the record that Southwestern Bell successfully carried its

burden of producing evidence which articulated legitimate, non-discriminatory reasons for the treatment accorded appellant. The district court found that the appellant received intense training with the other individuals who began as deskmen with her, and that in fact, she received more on the job training than any of the others in her group. The district court found this additional training to be necessitated by appellant's lack of background in craft work and by the continued appraisals of her work which indicated that she needed improvement in several areas. The district court further found that all the beginning deskmen in appellant's group made satisfactory progress, except appellant, despite the many efforts to train her; and that appellant was demoted from her position as a deskman due to her inability to perform the job satisfactorily, and not as a result of her being a female. Finally, the district court found that there was no credible evidence of harassment or reprisal against appellant as a result of the filing of her EEOC charge.

Our close review of the entire record indicates that the district court's findings of fact were not clearly erroneous. *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1281 (8th Cir. 1980); F.R.Civ.P. 52(a). The evidence adduced at the trial amply supported each of them. These findings of fact support the conclusion that Southwestern Bell did not discriminate against appellant in her application for, training in and demotion from the deskman's position. The district court's findings of fact also are sufficient to support its conclusion that the appellant was not the victim of harassment or reprisal. The evidence in the record supports the trial court's finding that appellant was demoted from the position of deskman because of her unsatisfactory performance in that position, and that her poor performance was not the result of disparate treatment due to her sex.

### III.

■ The district court also concluded that appellant was not discriminated against regarding the compensation paid to her as a deskman. Appellant disputes this conclusion. She argues that she was paid a wage which was less than that paid to other male deskmen whose overall seniority with the company was the same as hers[5] and that this treatment violated 42 U.S.C. § 2000e-2(a)(1).[6]

The facts underlying this allegation of error were mostly undisputed at trial. When appellant held the position of repair clerk she earned $110.00 per week. A repair clerk is a non-craft position. When appellant was promoted to deskman, a craft position, she was included with a group of four other individuals who were also promoted to craft positions as beginning deskmen. As a beginning deskman, appellant's salary was $114.00 per week. This represented the highest salary in the group with which she began.[7] Employees who had been deskmen longer than appellant, but who had the same overall seniority with the company as appellant, were paid a higher wage.

After a careful review of the record and the district court's findings we conclude that the factor most affecting appellant's pay, in relation to other deskmen, was seniority *within* the craft position itself. The system at Southwestern Bell was structured

5. At trial appellant sought recovery for the alleged disparity in pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). She did not allege a violation of the Equal Pay Act, 29 U.S.C. § 206(d).

6. 42 U.S.C. § 2000e-2 states, in pertinent part:
(a) Employers. It shall be unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...

7. Of the five individuals who started as deskmen in that group, appellant was paid $114.00 per week; Mr. Moore $99.50 per week; Mr. Klein $91.50 per week; Mr. Johnson $90.50 per week; and Ms. Williams $93.00 per week.

so that seniority within a craft position, not overall seniority with the company, governed appellant's rate of pay.[8] Generally, pay rates and pay progressions were governed by the Collective Bargaining Agreement entered into between appellant's union and Southwestern Bell. This agreement determined what individuals were paid when they entered a craft position, regardless of their overall seniority with the company.[9] Subsequent pay progressions were then based on seniority within the craft.

We are in agreement with the findings of the district court that the disparity in appellant's pay and that of other deskmen was due to her lack of seniority as a deskman and not the result of sex discrimination.[10]

Since the difference in pay appellant complained of was the result of the prevailing seniority system, and not because of her sex, the issue is whether such a pay difference can be validly based on the seniority system used by appellee. We are persuaded that in the light of the facts of this case it can.

The provisions of 42 U.S.C. § 2000e–2(h) make it clear that a bona fide seniority system is a valid defense to the application of different standards of compensation.[11] A bona fide seniority system is defined as one that is based on pertinent objective criteria impartially applied to all employees. *Acha v. Beame*, 570 F.2d 57, 64 (2d Cir. 1978); *United States v. St. Louis-San Francisco Railway Co.*, 464 F.2d 301, 309 (8th Cir. 1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 900, 34 L.Ed.2d 687 (1973). The seniority system utilized by Southwestern Bell applied equally to all employees in the craft position, regardless of race or sex. Further, the record does not contain evidence to indicate that the seniority system in question, though neutral on its face, acted to perpetuate past discriminatory practices.[12] Thus, the disparity in compensation experienced by the appellant was the result of a bona fide seniority system and not the result of sexual discrimination.

## IV.

Appellant finally argues that the district court erred in failing to exclude witnesses from the courtroom, pursuant to Fed.R.Evid. 615,[13] after appellant had moved for such exclusion. The motion for exclusion of the witnesses came on the

---

8. It is important to note that appellant's transfer from a non-craft position to a craft position did not result in the forfeiture of her overall seniority with the company. Had such a forfeiture occurred we would then be compelled to review Southwestern Bell's seniority system in light of the analysis used in *United States v. N. L. Industries, Inc.*, 479 F.2d 354 (8th Cir. 1973). However, under the seniority system at issue in this case, appellant's overall seniority was still determinative for such benefits as choice of hours, choice of vacation weeks, and choice of overtime worked. Her overall seniority also affected job-bidding and promotion.

9. Even though appellant's salary as a repair clerk in a non-craft position exceeded the maximum beginning salary provided for a deskman, the appellant received a nominal raise of $4.00 per week as part of her promotion.

10. The district court also found, as a factual matter, that craft positions were more technical than non-craft positions, required unique analytical skills, and were higher paid than non-craft positions. Our review of the record indicates that these findings are not clearly erroneous.

11. 42 U.S.C. § 2000e–2(h) states, in pertinent part:

(h) Seniority or merit system; ability tests. Notwithstanding any other provision of this title (42 U.S.C. §§ 2000e *et seq.*), it shall not be an unlawful employment practice of an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin ...

12. Seniority systems which are neutral on their face have been held to be invalid if they perpetuate the effects of past discriminations. *United States v. N. L. Industries, Inc.*, 479 F.2d 354 (8th Cir. 1973); *United States v. St. Louis-San Francisco Railway Co.*, 464 F.2d 301 (8th Cir. 1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973).

13. Fed.R.Evid. 615 states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an

second day of trial, after some of appellant's witnesses had testified. The district court denied appellant's motion on the ground that it was not timely made.

The witnesses who testified on the first day of trial were management level employees of Southwestern Bell.[14] After the district court denied appellant's motion to exclude, these witnesses were allowed to remain in the courtroom during the testimony of other witnesses. Appellant alleges that the presence of witnesses in the courtroom, who were management level employees of Southwestern Bell, adversely affected the credibility and substance of later testimony by witnesses who were non-management employees. Appellant contends this adverse effect occurred because the non-management employees feared reprisals from the management level employees present in the courtroom.[15]

It is clear from the wording of Rule 615 that generally the exclusion of witnesses so they cannot hear the testimony of other witnesses is required when requested by a party.[16] *United States v. Warren*, 550 F.2d 219, 227 (5th Cir. 1977), *rehearing denied*, 558 F.2d 605 (5th Cir.), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978). Rule 615 does not specifically require that the exclusionary request be made at any particular stage of the trial.

We need not decide whether the exclusionary request made by appellant was erroneously denied, for the law requires that any such error must be one that is prejudicial to the party requesting exclusion. Otherwise, it will be considered harmless error. *United States v. Warren, supra*. The record does not reveal, and the appellant has been unable to show, that she was prejudiced by the ruling of the district judge. There has been no showing that the credi-

bility or substance of any of the testimony from non-management employees was adversely affected. Nor can an inference of adverse effect be fairly drawn from the record. Appellant has also failed to demonstrate that non-management employees feared reprisals, were threatened with reprisals, or experienced any reprisals as a consequence of their testimony.

This case was tried to the court, not to a jury. Any effect on the credibility or substance of testimony at the trial could best be ascertained and weighed by the district judge. He had the opportunity to view first hand the conduct and demeanor of the witnesses and to consider their credibility. Absent a clear abuse of discretion by the judge who saw and heard the witnesses we must defer to this finding on matters of witness credibility. *Kendrick v. Commission of Zoological Subdistrict*, 565 F.2d 524 (8th Cir. 1977).

The judgment of the district court is affirmed.

---

officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

14. These witnesses were called to testify by appellant.

15. The purpose of Rule 615 has been described as "exercis[ing] a restraint on witnesses 'tailor-

ing' their testimony to that of earlier witnesses; and aid[ing] in detecting testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976).

16. The Rule itself contains several specific exceptions to the exclusion of witnesses on request. *See* note 13, *supra*.