**Robert E. WILSON, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 78–K–1214.**

United States District Court, D. Colorado.

July 28, 1981.

H. Earl Moyer, Moyer & Beal, Lakewood, Colo., for plaintiff.

Beverly R. Buck, Sp. Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

KANE, District Judge.

This Title VII case was tried before me commencing July 20, 1981 and concluding on July 23. After reviewing the evidence and listening to the arguments I am ready to rule. This memorandum opinion shall constitute my findings of fact and conclusions of law required by Rule 52, F.R.Civ.P.

On August 10, 1979 I entered an order granting partial summary judgment. That order is found at 473 F.Supp. 1350 and is incorporated herein in its entirety. Thus, I see no purpose in reiterating the facts set forth therein. The plaintiff is a black male who was employed by the Department of Health, Education and Welfare as the branch manager of the East Colfax office of the Social Security Administration in Denver. He supervised 24 employees. In addition to the Secretary of Health and Human Services, the defendant is an official of the Social Security Administration.

On August 27, 1976 the American Federation of Government Employees, Local 1802, filed a grievance which alleged misconduct on the part of the plaintiff in his supervision of employees. Attached to the grievance were signed statements from 22 of the 24 employees subject to plaintiff's supervision. The grievance precipitated an investigation by the Area Director who acted at the request of the Deputy Regional Commissioner. The grievance was resolved, but the ensuing investigation resulted in a recommendation by the Area Director that the plaintiff be removed from government service.

As set forth in my order granting partial summary judgment, the precise charges are not in issue here. Those which were sustained are taken by me as proved. I am not acting to review the sufficiency of the evidence or the correctness of the charges except insofar as they might be used as a pretext for illicit discrimination. Some of the charges were sustained and a couple were dismissed. The sustained charges involved conflict of interest, engaging in outside work or activity on government time, handling financial obligations in a manner reflecting adversely on the government and using a position or office to coerce employees to cash personal checks. The checks were dishonored for insufficient funds, but the employees were eventually repaid.

I find that the Area Director intended to recommend removal from government service based on the foregoing charges. It is purely conjectural whether that recommendation would have been followed because of certain crucial facts which occurred thereafter and which I find were serious enough to warrant removal and, in the light of the circumstances presented, did not serve as a pretext for removal because of invidious discrimination.

The plaintiff asked for a formal hearing on the previously mentioned charges and he retained legal counsel to represent him at the hearing. A hearing was ordered, but

due to some confusion the attorney did not appear at the scheduled time of the hearing. The hearing was postponed. Immediately following the postponement, the plaintiff went to the Southwest Denver Social Security Branch Office and met with its branch manager, Sifredo Martinez-Romero. While Martinez testified at trial in a rather subdued manner about the words and conduct of the plaintiff at that meeting and while the passage of time has undoubtedly permitted Martinez to view the incident with greater tolerance, he nevertheless made an immediate report to his supervisor which, I find, made plaintiff's dismissal inevitable. Because of its importance, I set forth the report in its entirety:

Jan 3, 1977
2:35–3:20 PM
SW Denver B/O

Re: Bob Wilson's Visit
To My Office

Bob came to my office unannounced. As it turned out Bob asked me to tell Star Neroes, ODC that works in Bob's office (NE Denver BO), to drop her charges against Bob Wilson. I told Bob that I wouldn't involve myself in his office's charges against him. It is not ethical for me to influence this case in any manner. I would not do it.

Bob asked me to advise him as to what to do. I did not wish to involve myself in his problem in any manner. Bob told me that the reason he came to my office was to tell me that he wasn't going to "sink by myself. I'm going to take some people with me." He also told me that he was going to involve all the SSA managers because, in his opinion, if "other" managers do something that he is now being charged that that means that SSA is singling him out—and that's discrimination.

Bob also told me that his lawyer is going to question me and my employees about my behavior. I told him that I wasn't being charged, but it was he that was being charged. Bob replied again that if other manager's do the same thing then why single him out—that is discrimination. Bob, again reiterated that I should

pressure Star to drop her charges because if he goes down his lawyer is going to "run Star over the coals; you know how hyper she is, my lawyer will fry her under the stand."

/s/ Sifredo Martinez-R

This report caused defendants to cancel the postponed hearing, place plaintiff on non-duty status and serve him with notices of suspension and proposed removal from employment. I find that the letter accurately reports a serious attempt to intimidate and suborn witnesses. Aside from various regulations and personnel instructions, the conduct of the plaintiff constituted a blatant subversion of the fact finding process and, as such, illustrates such a gross incapacity to follow accepted norms that removal from a management position was the only responsible decision which could have been made.

On January 18, 1977 plaintiff filed an EEO complaint. The charges included the proposed removal, lack of opportunity to perform duties, denial of within grade increase and performance appraisal and having too many blacks assigned to his supervision. On January 31, 1977 the Deputy Regional Commissioner issued a final decision of removal and plaintiff appealed. On October 31, 1977, the plaintiff elected to appeal his removal on the basis of discrimination pursuant to 5 C.F.R. Part 713. On April 26 through 28, 1978, the hearing was held and the hearing officer thereafter issued a decision in which he found that all but two of the disciplinary charges were sustained. He also held that the plaintiff's discrimination charges were not proved. The decision became the final agency decision and the plaintiff completed the necessary steps to vest this court with jurisdiction for entertaining his complaint which was filed on November 17, 1978.

At trial the plaintiff, with considerable skill, has sought to prove that the decision to terminate based upon the charges made was merely a pretext for invidious discrimination. He likewise attempted to prove that he received disparate treatment in that

 

termination was an excessive sanction used against him whereas others who, according to plaintiff, committed far worse acts were only demoted, suspended or transferred.

 The defendants have argued that before I can find disparate treatment I must find that other discipline cases were based on facts identical to those presented here. Thus, according to defendants' argument, since the facts presented here are unique, there is no basis for a finding of disparate treatment. I reject this argument. In order to show disparate treatment, it is not necessary to prove duplication of all data. It is sufficient to show similarity and it is necessary in making comparisons to view the compared treatments as they occur in a process rather than as they might be made to appear in a category. Certainly, the more the separate incidents resemble one another, the more persuasive the comparison will be, but procrustean exactitude is neither possible to achieve nor intelligent to require.

 In the instant case, the number of cases involving branch managers is insufficient to form a basis for comparison. Higher ranking officials were involved in various offenses with varying degrees of culpability. Two cases involved treatable problems with alcohol. Another case involved serious psychiatric problems. In the most serious case presented, an individual who had perverted the merit selection system was demoted and subjected to loss of pay. The reason given for discipline less than termination in the latter case was that the facts upon which the penalty was based occurred four years earlier. In the remaining cases, transfers and treatment programs were initiated.

It is true that no such transfer or treatment programs were initiated with respect to the plaintiff. It is equally true that no such program was sought. Given the passage of time between the event and the investigation in the one case and the remedial actions attempted in the others, I find that the treatment afforded the plaintiff in this case is clearly distinguishable and, hence, disparity of treatment cannot be es-

tablished. As previously mentioned, the last episode of plaintiff's activity involving the threats made to Martinez amount to an attempt to obstruct the fair presentation of evidence. As such, the legitimacy of the rules is not subject to serious question and severe sanctions imposed for the violation of them do not even suggest discrimination. *See* my opinion in *Harris v. Ralston Purina Co.*, 471 F.Supp. 405 (D.Colo.1979).

 In sum, I find that the disciplinary action taken in this case was based upon valid cause. From the totality of the evidence and from a careful appraisal of the testimony at trial and an assessment of the conduct and behavior of the witnesses at trial, I am convinced that the actions taken against the plaintiff in this case were taken irrespective of race, without personal malice and with intent to act in the best interest of the agency involved. Accordingly, it is

ORDERED that judgment shall enter in favor of the defendants and against the plaintiff. Each party to bear his own costs.