BLUEBEARD'S CASTLE
HOTEL, Appellant,

v.

GOVERNMENT OF the VIRGIN ISLANDS, DEPARTMENT OF LABOR and Leon Aubain, Appellees.

No. 85–3216.

United States Court of Appeals,
Third Circuit.

Argued Dec. 4, 1985.

Decided March 18, 1986.

Aurelia O. Rashid (argued), Birch, De Jongh & Farrelly, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellant.

Dennis W. Heileman (argued), Counsel to Dept. of Labor, Government of the Virgin Islands, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellees.

Before HUNTER, GARTH and BECKER, Circuit Judges.

## OPINION OF THE COURT

.GARTH, Circuit Judge:

On January 19, 1983, Leon Aubain filed a charge of employment discrimination with the Virgin Islands Department of Labor, alleging that Bluebeard's Castle Hotel (Bluebeard) had violated V.I.Stat.Ann. tit. 24, § 451(a) by discharging him on November 16, 1982 because of his race, color and/or national origin.[1]

 Following an administrative hearing, the Department of Labor concluded that Aubain "was a victim of disparate treatment on account of race and/or national origin," and ruled that he was entitled to reinstatement and back-pay.[2]

---

1. V.I.Stat.Ann. tit. 24, § 451(a) provides:

 § 451. Unlawful practices

 Notwithstanding the provisions of any other law, it shall be unlawful employment practice or unlawful discrimination:

 (a) For an employer to refuse to hire or employ or to bar or discharge from employment, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;

2. The collective bargaining agreement between Bluebeard and its employees in effect at the time of Aubain's termination contained a nondiscrimination clause and a detailed grievance procedure. Aubain did not exhaust his remedies available under the collective bargaining agreement prior to filing charges with the Department of Labor. (A.R. 60). Nevertheless, the Department properly exercised jurisdiction over this matter. It is well-settled that a plaintiff alleging racial or ethnic discrimination need not exhaust his contractual remedies before bringing a civil rights action. *See International Association of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 707, n. 6 (3d Cir.1982).

Upon petition for a Writ of Review filed by Bluebeard, the District Court for the Virgin Islands affirmed the decision of the hearing officer on February 26, 1985. This appeal followed. We reverse.

## I.

Since 1963, appellee Leon Aubain, a white male of French ancestry, was employed as a maintenance worker by Bluebeard. On November 15, Aubain, upon receiving a call from his wife, left work at noon to take his daughter to the hospital. Aubain notified the hotel manager's secretary of his departure and that he would probably not return to work that day. Aubain later returned to work that afternoon at approximately 1:26 P.M.

On November 16, 1984, Aubain again left at 12:00 noon to pick up his wife at the hospital. He did not notify anyone that he would return late, allegedly because he did not expect to be gone longer than his allotted 30 minute lunch break. However, Aubain was detained at the hospital and accordingly did not return to work until approximately 1:30 P.M.

Upon returning to work, Aubain proceeded to the cafeteria to eat lunch. While there, Clarence Forbes, Aubain's immediate supervisor, asked Aubain how many hours he had taken for lunch that day. Aubain immediately leaped from his seat towards Forbes in a threatening manner and began shouting obscenities. According to Forbes, Aubain said to Forbes, "Your mother's scunt. You are fucking with me. You don't know who you are fucking with, but I'm going to get you." [3]

Forbes related this incident to Raymond DeLugo, the white male hotel manager at Bluebeard, who wrote a letter to Aubain terminating Aubain pursuant to Article III, Section 5; Article XIII, Section 1; Article XVI, and Article XVIII, Section 1 of the collective bargaining agreement then covering Bluebeard employees. [4]

Prior to this incident, Aubain had received no written letters of reprimand during the course of his 20 year employment at Bluebeard's. However, he had been the subject of two oral rebukes for prior instances of misbehavior. On one occasion, Aubain rudely demanded a salary increase, and in another Aubain was involved in an altercation with a co-worker. (A.R. 123).

As of the time of Aubain's dismissal, Bluebeard employed 77 employees, of whom four were white of French ancestry. Turnover of employees at the Hotel was low, and prior to Aubain's termination, no white employee had been fired by the Hotel.

On November 22, 1982, one week following Aubain's termination, Anthony White, a black employee, was given a warning let-

---

**3.** Inexplicably, the ALJ made no specific finding of fact that these were Aubain's exact words. However, Aubain's version of the altercation essentially matched Forbes' version. *Compare* A.R. 120 *with* A.R. 127. Both versions were introduced as evidence and Aubain never denied or contradicted the statements which gave rise to his discharge.

**4.** Article III, Section 5 provides:
> *Section 5.* The employer agrees that all employees will be treated with courtesy and respect and the Union agrees that all supervisory personnel shall also be so treated by the employees.

Article XIII, Section 1 provides:
> *Section 1.* A sanitary and comfortable area shall be provided for employees where they will be given daily, when on duty, a free, tasty, nutritious and adequate meal. A period of no less than thirty (30) minutes shall be given for the consumption of such meal.

Article XVI provides:
> Employees shall obey all reasonable rules and regulations of the Employer which are necessary to maintain efficiency and discipline provided that such rules and regulations are not discriminatory, and are brought to the attention of the Union for prior advice and consultation.

Article XVIII, Section 1 provides:
> *Section 1.* Physical fighting; intoxication; dishonesty; walking off the job without proper excuse; habitual absenteeism or lateness; gross insubordination; gambling; *abusive behavior towards guests, supervisors or other personnel;* thievery, and/or toting; wilful destruction of the Employer's property; *abusive language and behavior occurring on the premises of the Employer or in the course of employment;* shall be considered just cause and valid reasons for immediate dismissal or other disciplinary action (emphasis added).

ter[5] by his immediate supervisor, a black housekeeper, for insubordination, using abusive language, leaving his work area without proper excuse, failing to do his job effectively and talking back to his supervisor in a rude manner.[6]

## II.

▮ In this case, the only evidence of record which even could be characterized as evidence of racial discrimination is that employee Aubain was fired and employee White was not. Thus, the sole issue before us on appeal is whether substantial evidence on the record exists which would support the district court's affirmance of the Department of Labor's conclusion that Aubain's termination was motivated by discrimination on account of race and/or national origin in violation of Virgin Islands law. In order to state a claim for employment discrimination, the employee must initially prove: 1) that he is a member of a protected class; 2) that he was discharged; and 3) that evidence exists that his employer intentionally discriminated against him by reason of race or national origin. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Discriminatory intent can be inferred from the fact of disparate treatment of members of different races and/or national origins in similar factual circumstances. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

▮ Once the employee meets this initial showing, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The charging party must then offer evidence showing that despite the existence of a legitimate basis for the discharge, those reasons were merely pretextual for the racial and/or ethnic discrimination which in fact motivated the discharge. To demonstrate pretext, it is relevant that employees outside the protected class "involved in acts against [the employer] of comparable seriousness ... were nevertheless retained or rehired." *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

Here, it is undisputed that discharge was an appropriate disciplinary measure for Aubain's misconduct pursuant to the collective bargaining agreement. However, the Department of Labor found that the severity of the discipline—discharge—was not comparable to punishment imposed by Bluebeard on other *non-white* employees for similar misconduct. Thus, the Department concluded that Aubain's termination was motivated by discrimination against him on account of his race and/or national origin and, that accordingly, the reasons offered by Bluebeard for his dismissal were merely pretextual.

As evidence of disparate treatment, the Department of Labor relied heavily on Bluebeard's issuance of only a warning letter to Anthony White, a *black*, one week after Aubain's dismissal for behavior found by the hearing officer to be *"very* similar" to that giving rise to Aubain's discharge (emphasis in original).

---

**5.** The full text of the letter to Anthony White from E. Holloman, Housekeeper, was as follows:

> "This letter is to warn that you have been insubordinate, used abusive behavior, walked off from your section without proper excuses and have not been doing your job effectively and talking back to your Supervisor in a rude manner.
>
> Unless your attitude is changed at once we will have to take disciplinary action towards you.
>
> /s
> E. Holloman, Housekeeper
> Department Head

**6.** The administrative record also revealed that Earl Challwell, a black, who had been absent without explanation at least 9 times, had only been issued warning letters and given one suspension, but was otherwise not disciplined. Similarly, Lucille Hodge, a black, was given warning letters for being tardy 9 out of 10 days and for being found in unassigned areas, but was not terminated. As justification for firing Aubain and not Anthony White, Bluebeard stated that the warning letter was given to White by his immediate supervisor prior to the Hotel Manager's review of the matter and that the two incidents were not identical.

Ordinarily, factual findings made by an administrative agency are conclusive if supported by substantial evidence. V.I.Code Stat.Ann. tit. 24 § 457(b); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Generally, a reviewing court will not substitute its view of the evidence for that of the administrative agency. The findings and conclusions of the Hearing Officer must be deferred to if they are reasonably based on evidence in the record.

■ A claimant alleging racial or ethnic discrimination need not prove that two similar incidents were in fact "identical" in order to demonstrate pretextual discharge. *See Wilson v. Schweiker*, 518 F.Supp. 1246 (D.Colo.1981). However, in determinating whether there is substantial evidence to support a finding of pretextual discharge, it is helpful to keep in mind that evidence of disparate treatment is used to *infer* intentional discrimination by the employer—it is not, however, direct evidence of such intent.

■ In this appeal, Bluebeard argues that the Hearing Officer's conclusion that Aubain's dismissal was pretextual was not based on substantial evidence. We agree. The only evidence of record regarding the circumstances surrounding the White incident is the warning letter directed to White by his immediate supervisor. No other testimony or evidence was presented regarding the nature of White's behavior. This paucity of evidence provides insufficient detail and an insufficient basis upon which to measure the similarity between the Aubain and White incidents.

Although White's warning letter contained references to three specific infractions justifying discharge under the collective bargaining agreement—acts generally similar to those committed by Aubain—there is no evidence the White's misconduct

was as grave as Aubain's. For example, there is no evidence that White used obscenities when he spoke to his supervisor, or that he threatened his supervisor with harm, as did Aubain. The Hearing Officer's recognition that the "exact conduct of Anthony was not disclosed" wholly undercuts her finding that there was substantial evidence that the circumstances surrounding the White incident and the Aubain dismissal were *"very* similar."

■ An "employer has some discretion to consider all the facts and determine whether the discharge is an appropriate remedy or whether a milder punishment would be more appropriate," *Higgins v. Gates Rubber Co.*, 578 F.2d 281, 284 (10th Cir.1978) quoting from *Kendrick v. Comm'n of Zoological Subdist.*, 565 F.2d 524, 527 (8th Cir.1977). More evidence than the mere fact that a black employee was *not* discharged for arguably, at best, similar conduct must be demonstrated to sustain a charge of intentional discrimination. *See Brady v. Allstate Ins. Co.*, 683 F.2d 86, 89 (4th Cir.1982).

Further, the hearing officer's finding that Bluebeard's explanation for its alleged disparate treatment of Aubain was "unpersuasive" is similarly unsupported by substantial evidence. The Bluebeard Hotel Manager testified that the warning letter issued to White was sent by White's immediate supervisor before the Manager became aware of the incident. He stated that by the time he was aware of the occurrence, it was too late to administer any more severe punishment. The Hearing Officer stated:

> The undersigned finds the explanation given unpersuasive since the person who initiated the disciplinary action was a subordinate of the resident manager and because there existed no evidence to indicate that the resident manager was "powerless" to alter the initial disciplinary action.

A.R. 72.

However, there is no evidence that the Hotel Manager's belief that he was "powerless" to inflict more severe discipline on White was motivated by improper racial or

ethnic considerations. The Hotel Manager's decision not to overrule a decision of a subordinate supervisor to inflict a less severe punishment on an employee should be, without more, left to the discretion of the employer.[7]

### III.

We conclude that there is no evidence that Aubain, an employee of the Hotel for some 20 years, was discharged for any reason other than his threatening and abusive behavior and his insulting obscenities. The record is totally barren of evidence supporting a finding of disparate treatment necessary to state a *prima facie* case of racial discrimination. Even if the record could be so construed to support such a claim, there is no evidence that the reasons specified by Bluebeard for terminating Aubain were a pretext for racial discrimination.

Accordingly, we will reverse the decision of the district court and direct that judgment be entered in favor of Bluebeard.

---

**7.** That the Hotel Manager was informed of the Aubain altercation before any disciplinary action was instituted is in itself a significant difference from the White incident arguing against a finding of disparate treatment.