Otis HIGGINS, Plaintiff-Appellant,

v.

GATES RUBBER COMPANY, Defendant-Appellee.

No. 76–1847.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 23, 1978.

Decided June 15, 1978.

Penfield W. Tate, II, Denver, Colo., for plaintiff-appellant.

Dayton Denious, Denver, Colo., for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This in forma pauperis appeal is from a denial of relief requested under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1970). Section 2000e–2(a)(1) makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race." Since plaintiff does not claim the trial court's findings of fact should be set aside as clearly erroneous under Rule 52, Fed.R.Civ.P., we need not review the record. Our review will be limited to an examination of plaintiff's contention that the trial judge misapplied the law to those evidentiary findings.

Employed by Gates since 1949, plaintiff was transferred in 1962 into a department of the company in which he and another black employee were the first blacks so assigned. Evidence showed that Max Gerber, Robert Asher and John Rice, three white fellow employees, occasionally teased, ridiculed and harassed plaintiff. In particular they commented about how clean and sharp he dressed for work in a machine shop, made remarks about the various hats and caps he always wore on and off the job, and at times squirted water on him with water guns. The trial court did not find that Gates was aware of, condoned, or acquiesced in the horseplay and occasional harassment of plaintiff. On at least one occasion, plaintiff complained to his foreman about another employee's racist comments and the offending employee was promptly instructed to refrain from such remarks. Once a foreman who, in the presence of plaintiff, told a joke having racial implications was ordered to apologize.

On May 6, 1971, plaintiff arrived at work wearing a new cap. In the presence of other workers waiting in line to punch in or out of work, Gerber and Asher kidded plaintiff and attempted to knock his cap to the floor. Plaintiff warned them to stop, but when Gerber persisted plaintiff hit him in the mouth. Plaintiff then set his lunch down and picked up a metal bar with which he struck Gerber on the head. Employees witnessing this incident prevented plaintiff from inflicting additional blows. Following a company investigation, plaintiff was discharged for an assault with a deadly weapon. Gerber was suspended for two weeks; Asher and Rice received no punishment.

Plaintiff filed a grievance with his union. The grievance was ultimately submitted to arbitration and an arbitrator found that the discharge was proper. Plaintiff also filed timely charges with the Colorado Civil Rights Commission and the Equal Employment Opportunity Commission (EEOC).

Although the EEOC did not initiate any action against Gates, it issued plaintiff the requisite right to sue letter and plaintiff brought this case in federal district court within the 90 day limitation permitted by that letter. Following a trial of the case to the court sitting without a jury, the district judge concluded:

The company, in my opinion, acted responsibly in this case, acted in a manner in which they reasonably relied upon the facts as they saw them, and that the facts as the officials who made the decision for the company to terminate Mr. Higgins were to them that he had endangered the life of another employee by striking him with a dangerous object.

That action, therefore, cannot be considered to be discriminatory.

Certainly that is not a pretextual firing. There was cause, and the plaintiff's case fails on the matter of provocation, as I have indicated.

Record, vol. 5, at 9.

█ Plaintiff's first complaint on appeal is that the trial court erred in failing to hold that Gates committed an unlawful employment practice by not providing him a workplace free from racial insults, invective, intimidation or other forms of racial discrimination. It is apparent, however, that the sole issue set forth in the pretrial order and tried by the court was "[w]hether by terminating his employment Gates discriminated against Higgins in violation of the Civil Rights Act." Record, vol. 7, at 14. We have previously held that a pretrial order measures the dimensions of a lawsuit both in the trial court and on appeal. *American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 806 (10th Cir. 1977); *Hodgson v. Humphries*, 454 F.2d 1279, 1281 (10th Cir. 1972), and cases cited. No objections or motions to amend the pretrial order pursuant to Rule 15(b), Fed.R.Civ.P., were ever made by either party to embrace the issue of discriminatory workplace environment. Relying on *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 344 (10th Cir. 1975), plaintiff argues that his complaint of discriminatory discharge is broad enough to

encompass the alleged unlawful work atmosphere issue. Plaintiff's reliance is misplaced, however, since *Rich* involves the scope of discovery rather than the scope of the pleadings or the pretrial order.

█ Since the issue of Gates' liability for an allegedly discriminatory work environment is beyond the scope of the pretrial order and was not tried by the trial court, we need not consider it on appeal. Nevertheless, even on the merits, plaintiff's contention is not persuasive. Evidence of plaintiff's work environment was introduced and considered by the trial court for the purpose of ascertaining whether plaintiff's assault was justified by the provocation of other employees. The trial judge found that plaintiff assaulted Gerber "in a rage" and "with a feeling of great provocation." Record, vol. 5, at 7. He ruled, however, that "this feeling of provocation cannot . . . be held to justify an assault or battery upon another person in and of itself." *Id.* at 8. Although recognizing that plaintiff and all other workers "had the right to work in an atmosphere free from that kind of racial intimidation and invective and insensitivity," the court concluded the company "cannot be an insurer against all racial insults and racial incidents," and "can't be expected to provide a working environment that is completely sterile of the weakness of prejudice." *Id.* at 8–9. Absent a finding that Gates was or should have been aware of this unfavorable atmosphere, we cannot hold that the trial judge erred as a matter of law by not finding Gates in violation of the Civil Rights Act.

Plaintiff also assigns as error the trial court's finding that Gates did not violate the Civil Rights Act by not discharging the white co-workers involved in the incident. This argument is little more than a disagreement with the finding of the trial court that plaintiff's assault was not justified— that his violent response was greatly disproportionate to the harassment. Plaintiff relies on *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), a case involving three fellow

employees charged with theft. In its consideration of an employer's dismissal of two white employees and retention of the black employee, the Court held that failure to apply the same criteria for discharge to members of all races alike is a violation of the Civil Rights Act. *McDonald* is easily distinguished from the instant case. All three employees in *McDonald* were jointly engaged in the same conduct. Here the repeated harassment by fellow white employees is very different in nature from the violent assault by plaintiff. The variance in sanctions imposed in *McDonald* was attributable to but one factor—difference in race. The variance in sanctions imposed in this case is attributable to a nonracial factor—the difference in nature and degree of injury inflicted on the victim.

We are not prepared to accept plaintiff's argument that an employer must mete out a sanction for emotional and psychological harassment that is equal to its sanction for infliction of serious bodily injury. "Certainly an employer has some discretion to consider all the facts and determine whether the discharge is an appropriate remedy or whether a milder punishment would be more appropriate." *Kendrick v. Comm'n of Zoological Subdist.*, 565 F.2d 524, 527 (8th Cir. 1977), citing *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

▮ Plaintiff relies on *Discharge for Provoked Assault on Biased Foreman*, No. 71–720, EEOC Decisions (1973) (CCH) ¶ 6179 (Dec. 17, 1970), in which the Commission ruled there was reasonable cause to believe an employer violated the Civil Rights Act by discharging a black employee who physically assaulted his foreman in reaction to the foreman's provocative racial harassment over a one and one-half year period. That decision acknowledges the doctrine of provocation as it applies to cases of alleged unlawful discharge, but it does not govern the case before us. "A determination that [an employer] discriminated against the Plaintiff in employment because of his race in violation of 42 U.S.C. Sections 2000e, *et seq.* is essentially a question of fact."

*Franklin v. Crosby Typesetting Co. & Int'l Typeographical Union*, 411 F.Supp. 1167, 1171 (N.D.Tex.1976); *see Howard v. National Cash Register Co.*, 388 F.Supp. 603, 605 (S.D.Ohio 1975). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court allocated the burden of proof in individual employment discrimination cases: (1) the plaintiff must present a prima facie case of racial discrimination; (2) the employer then has the burden to prove a legitimate, nondiscriminatory reason for his action; (3) the plaintiff then has the burden of proving that the employer's reason was a pretext for discrimination. *See Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1254 (5th Cir. 1977). We assume plaintiff presented a prima facie case. The trial court found, and plaintiff admits on appeal, that plaintiff's violent assault was an adequate and legitimate cause for discharge. The trial court also found as a matter of fact that plaintiff had not shown this reason to be a pretext for discrimination. This evidentiary finding is supported by substantial evidence in the record and is not challenged on appeal as being clearly erroneous. We cannot say the trial court erred as a matter of law in upholding Gates' discharge of plaintiff and retention of involved white co-workers.

In an attempt to demonstrate the discriminatory effect and establish that discharge for violent assault was merely a pretext, plaintiff pointed to statistics showing that more minority group employees than white employees were discharged by Gates for fighting. Plaintiff's compilation showed that seven blacks, one Spanish surnamed, one white and two employees of "unknown" race or ethnic origin had been discharged for fighting and not rehired. Gates' compilation indicated that fourteen whites, seven blacks, two Mexican-American, and one employee of "unknown" race or ethnic classification had been discharged for fighting and not rehired. These two compilations were ultimately accepted by the court as a single exhibit.

Statistical evidence showing an employer's treatment of employees according to racial, ethnic, or other classifications may be probative of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 804–05, 93 S.Ct. 1817. Although they may be probative, the statistics presented here certainly are not conclusive. Plaintiff agreed to the admission of both sets of statistics. It is the province of the trial judge to weigh conflicting evidence in the factfinding process. His conclusion that plaintiff's discharge was not pretextual is supported by the record and is not clearly erroneous. We cannot say the trial judge erred as a matter of law by not inferring discrimination from one of two conflicting statistical compilations.

Plaintiff's last contention is that the trial court erred in not making a determination as to the object used by plaintiff in the assault on Gerber. Since his discharge was based on an assault with a deadly weapon, plaintiff asserts the court should have decided whether he used a mandrel (a hollow aluminum pipe) or a T-shaped bailbuster (a heavy one-inch square metal bar approximately 30 inches long, with a cross piece 10 inches long at one end). Observing that the trial did not involve "an appellate review or a judicial review of the company's finding, that it was the heavier bar and, therefore, something of greater danger," the trial judge ruled "the issue before [him was] not the question of what did Mr. Higgins hit Mr. Gerber with?" Record, vol. 5, at 6. We agree. Since plaintiff concedes that fighting is an appropriate basis for discharge and that his conduct clearly violated company rules punishable by termination, the failure of the trial judge to decide which weapon he used was inconsequential.

Although the conduct of certain Gates' employees was reprehensible and provocative, we cannot say the trial judge erred as a matter of law or abused his discretion in concluding that Gates' discharge of plaintiff for assault with a deadly weapon was not a violation of the Civil Rights Act.

AFFIRMED.