Charles JEFFRIES, Jr., Appellant,

v.

METRO–MARK, INC., a Minnesota Corporation, Appellee.

No. 94–1299.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1994.

Decided Jan. 13, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 17, 1995.

Stephen Fiebiger, Minneapolis, MN, argued, for appellant.

Kevin P. Keenan, Minneapolis, MN, argued (Mark R. Whitmore, on the brief), for appellee.

Before HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JOHN R. GIBSON, Senior Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Charles Jeffries, a black man, worked at Metro–Mark, Inc., a printing plant, for 13 months before he was fired in late 1991. Metro–Mark cited threats allegedly made by Mr. Jeffries toward management and various employees as its reason for firing him. In mid–1992, Mr. Jeffries sued Metro–Mark, asserting claims of racial harassment and discriminatory discharge under 42 U.S.C. § 1981(a); under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e–2(a)(1); and under Minnesota anti-discrimination statutes, see Minn.Stat.Ann. § 363.03–1(2)(b), § 363.03–1(2)(c). Mr. Jeffries also asserted a state common-law claim for defamation related to the report of the threats that he allegedly made.

The trial court dismissed the claims based on 42 U.S.C. § 1981(a), holding that Mr. Jeffries was fired before an amendment to that statute went into effect that extended its reach to employment decisions other than those with respect to hiring. After a four-day trial in late 1993, the trial court found for Metro–Mark on the remaining racial harassment and discriminatory discharge claims; a jury found for Metro–Mark on the defamation claim.

Mr. Jeffries appeals, contending that the trial court was wrong in its findings and conclusions with respect to the racial harassment and discriminatory discharge claims; that the trial court improperly dismissed the claims under 42 U.S.C. § 1981(a); and that the trial court's jury instructions inappropriately placed the burden of proof on Mr. Jeffries rather than on Metro–Mark with respect to the defamation claim. We affirm the trial court.[1]

## I.

■ The trial court held that although Mr. Jeffries had been subjected to multiple incidents of racial harassment by co-workers at Metro–Mark, he reported only two of those incidents to management and that, in each of those instances, management took corrective action. Since an employer may be held liable only for events of which it knows or should have known, either directly or constructively, and with respect to which it fails to take corrective action, see, e.g., Katz v. Dole, 709 F.2d 251, 255 (4th Cir.1983), see also Higgins v. Gates Rubber Co., 578 F.2d 281, 283 (10th Cir.1978) (federal law), see, e.g., Continental Can Company, Inc. v. State, 297 N.W.2d 241, 247, 249 (Minn.1980), see also McNabb v. Cub Foods, 352 N.W.2d 378, 382, 384 (Minn.1984) (Minnesota law), the trial court found that no grounds existed for holding Metro–Mark liable for racial harassment of Mr. Jeffries. Our review of the trial court's factual findings and legal conclusion with respect to whether Metro–Mark should be held liable for racial harassment in this case is restricted to consideration of whether those findings and conclusion are clearly erroneous. See, e.g., Gilbert v. City of Little Rock, 722 F.2d 1390, 1394–95 (8th Cir.1983), cert. denied, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). Because of the nature of this case, we go into some detail about the harassment described as racial by Mr. Jeffries.

Mr. Jeffries testified that an employee in the art department laughingly told him about "a historical site" in the employee's neighborhood, namely, "a tree at which they hang niggers." From the context of the testimony, that incident had to have taken place between early 1991 and mid–1991. Mr. Jeffries complained to a supervisor about those remarks. According to the supervisor's testimony, he spoke to the employee about those remarks and also told the company president about the incident. In addition, the company president and the company vice-president both testified (although Mr. Jeffries did not) about a complaint from Mr. Jeffries that the same employee would repeatedly ask Mr. Jeffries for "the black perspective" on discussion topics. In response to that complaint, the company vice-president testified that he verbally reprimanded the employee and placed a written record of that reprimand in the employee's personnel file in

---

1. The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

mid–1991. That reprimand addresses not only remarks "seeking the 'black' perspective" but also "derogatory comments ... or ... any comments that could be construed as racist or harassing." The company president corroborated the company vice-president's testimony. The trial court's findings and conclusion accept as true that the art department employee was given a written warning in those respects.

In April, 1991, an employee from South Africa saw Mr. Jeffries and several white workers talking together and remarked, "[I]n my country, you guys would get arrested ... for unlawful assembly, ... especially if there is a black sucker amongst you." Mr. Jeffries complained to the company vice-president about that remark; the company vice-president immediately went to the company president, who called a meeting. Although Mr. Jeffries testified that he "was excused out of the meeting" after giving an account of the incident, the company president, the company vice-president, and a supervisor all testified that the company president requested an apology to Mr. Jeffries from the employee, that the employee did apologize, and that Mr. Jeffries accepted the apology. The company vice-president also testified that his written notes about the meeting were placed in the South African employee's personnel file. The trial court's findings and conclusion accept as true the testimony of the three management personnel about the apology and Mr. Jeffries's acceptance of it.

In his testimony, Mr. Jeffries described multiple other incidents of racial harassment—specifically, a summer intern's remark that Mr. Jeffries knew nothing about "white man's music," a supervisor's reference to him as "a monkey," a suggestion that he should buy a Cadillac to "transport ... whores," jokes by other employees about a highly publicized beating by police of a black man in Los Angeles, the placement at his work site of a newspaper photograph of a lynching, a reference to the alleged sexual characteristics of black women, and a reference to Mr. Jeffries's alleged sexual prowess. In each of those instances, however, Mr. Jeffries either conceded that he did not re-port the event to management or failed to testify to such a report.

We see no reason to doubt the trial court's findings and conclusion with respect to the incidents involving the art department employee and the South African employee. Nor do we question the trial court's findings that Mr. Jeffries never reported the other incidents described above and the trial court's conclusion that, as a result, Metro–Mark should not be held liable for those events.

We are somewhat troubled, we must admit, by Mr. Jeffries's testimony about two other incidents, neither of which was referred to by the trial court. Within the first few months of his employment, while he was working as a laminating assistant, Mr. Jeffries testified, the head laminator commented that "this is a white man's world" and suggested that Mr. Jeffries "wouldn't get anywhere, and ... would always be [the head laminator's] assistant." Mr. Jeffries testified that he complained to a supervisor about the head laminator's remarks. The supervisor "said he would take care of it," but Mr. Jeffries testified that he never saw anything "that would justify my curiosity that [the supervisor] took the matter in his hand."

Mr. Jeffries also testified that an employee in the screen-making department stated, "[G]et out of the way, boy," as he and Mr. Jeffries passed each other on one occasion. From the context of the testimony, that incident had to have taken place between late 1990 and April, 1991. Mr. Jeffries conceded that he did not report the incident at the time. He testified, however, that in the April, 1991, meeting (regarding the comments of the South African employee), he told the company president about both the "white man's world" comment of the head laminator and the statement of the screen-making department employee calling Mr. Jeffries "boy."

Although Mr. Jeffries testified that he reported both incidents, he offered no proof that Metro–Mark failed to take corrective action with respect to them. Both the company president and the supervisor in question testified at trial, yet Mr. Jeffries's lawyer asked neither person about those incidents. Nor were the personnel files intro-

duced of the head laminator or the screen-making department employee. If those files had lacked any written record of the incidents or an associated reprimand, it could be inferred that Metro–Mark had failed to take corrective action. In our view, however, it would be hardly more than speculative to conclude, solely from Mr. Jeffries's comment that he never saw anything to satisfy his curiosity in that regard, that no corrective action was ever taken with respect to the "white man's world" remark. As for the "boy" incident, Mr. Jeffries never even testified that he saw no corrective action.

Under these circumstances, we think it right to surmise that the trial court's failure to mention specifically those two incidents reflects either the trial court's conclusion that Mr. Jeffries failed in his burden of proof with respect to the lack of corrective action regarding them or the trial court's conclusion that Mr. Jeffries never reported those incidents. In other words, we cannot say that the trial court's conclusion that Metro–Mark should not be held liable for racial harassment is clearly erroneous. Indeed, it might well be that an opposite finding would be clearly erroneous. We therefore affirm that decision by the trial court.

## II.

The trial court also held that Metro–Mark's termination of Mr. Jeffries was not based on his race. We have read the transcript of the trial and have examined the exhibits submitted to us. We cannot say that the trial court's findings and conclusion that Metro–Mark should not be held liable for discriminatory discharge are clearly erroneous. *See, e.g., Boudreaux v. Helena–West Helena School District,* 819 F.2d 854, 855–56 (8th Cir.1987) *(per curiam ).* We therefore affirm that decision as well.

## III.

In *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 178, 189, 109 S.Ct. 2363, 2369, 2373, 2379, 105 L.Ed.2d 132 (1989), the Supreme Court held that claims of racial harassment and racial discrimination related to conduct in an employment setting that occurs after a person has been hired were not actionable under 42 U.S.C. § 1981. In response to that opinion, Congress amended the statute, adding a section specifying that all phases of any contractual relationship, not just its initiation, are covered by the law. *See* 42 U.S.C. § 1981(b). That section went into effect on November 21, 1991. *See, e.g., Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994).

Mr. Jeffries was fired on November 20, 1991. Since the provision of the statute extending its coverage to all phases of an employment relationship, not just hiring, is not retroactive, *see, e.g., id.* at ——, ——, 114 S.Ct. at 1513, 1520, the trial court was correct to dismiss Mr. Jeffries's racial harassment and discriminatory discharge claims under 42 U.S.C. § 1981(a). We therefore affirm that dismissal.

## IV.

Mr. Jeffries argues that under Minnesota law with respect to defamation claims, it is the defendant who has the burden of proving that the statements in question were true, rather than the plaintiff's having to prove that the statements in question were false. The Minnesota Supreme Court, however, has recently reiterated that the "elements of defamation require the plaintiff to prove that a statement was false." *Rouse v. Dunkley and Bennett, P.A.,* 520 N.W.2d 406, 410 (Minn.1994); *see also Nadeau v. County of Ramsey,* 277 N.W.2d 520, 523 (Minn.1979). We therefore find no error in the trial court's jury instructions on the burden of proof for Mr. Jeffries's defamation claim.

## V.

For the reasons stated, we affirm the judgment of the trial court.