**Darrion Keith PORTER, Plaintiff,**

v.

**CITY OF LITTLE ROCK, ARKANSAS, Defendant.**

**No. LR–C–93–019.**

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 29, 1995.

Paul N. Ford, Ford & Wadley, Jonesboro, AR, for plaintiff.

William C. Mann, III, City Attorney's Office, Little Rock, AR, for defendant.

## ORDER

ROY, Senior District Judge.

The plaintiff in this matter, Mr. Darrion Keith Porter, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* He alleges he was unlawfully discharged from his position as a probationary police officer with the Little Rock Police Department ("LRPD") on account of his race. For the reasons set out below, defendant City of Little Rock's pending motion for summary judgment is granted.

### I.

Plaintiff, a black male, was hired by defendant as a probationary officer on November 18, 1991.[1] The hiring was part of a program to recruit more black and other minority candidates for the LRPD. Plaintiff's recruiting class contained 17 people, including eight whites, eight blacks, and one Hispanic.

In what the plaintiff concedes is the *only* incident of racial harassment he can provide the Court, an incident took place on or about February 4, 1995, involving the plaintiff and three superior officers, all of whom white.

At some point, Officer Ron Ghormley either asked the plaintiff if all he wanted out of life was to be a "street nigger" (plaintiff's version) or if all he wanted out of life was to be a "street thug" (defendant's version). Plaintiff reported this incident on February 5th, which prompted Lieutenant Mike Lowery to look into the matter. After reviewing the written reports he had ordered from all involved, Lt. Lowery concluded this was simply a case of one man's word against another. He directed Officer Ghormley to speak to all probationary officers professionally. He told plaintiff that although the department took the matter of racial slurs seriously, there was

---

1. After satisfactorily serving a one year probationary period required by A.C.A. § 14–51–301, a new officer may only be fired for cause. Prior to that, he may be dismissed at the discretion of the chief of police.

no way to substantiate plaintiff's allegations based on only what he had before him.

On February 20, 1992, plaintiff was discharged. Among the deficiencies cited by his instructors were sleeping in class, being late to class, bringing a gun onto police academy property (which the Court presumes violated some policy), negligently allowing some of his police gear to be stolen, having "potential gang-related items" in his automobile, frequently arguing with his instructors, lack of cooperation with squad leaders, refusing to follow orders, tendency to use excessive force, and a general inability to get along well with both instructors and his fellow classmates.

Plaintiff timely filed a complaint with the EEOC, received his "right to sue" letter, and timely filed suit in this court.

## II.

In considering the defendant's motion for summary judgment, the Court will give the plaintiff the benefit of all reasonable inferences while determining whether there exists any genuine dispute as to any material fact. Nevertheless, in Mr. Porter's response to the motion he must "make a showing sufficient to establish the existence of an essential element to [his] case, on which [he] will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Part of plaintiff's burden at trial is putting on a *prima facie* case of racial discrimination, *i.e.*, that 1) he is a member of a protected class, 2) he was qualified for the position of police officer, 3) he was discharged, and 4) his discharge occurred in circumstances which allow the Court to infer unlawful discrimination. *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507 (8th Cir. 1995). The Court will assume for the purpose of addressing the summary judgment motion that the plaintiff has (or would have at trial) established a *prima facie* case. The Court finds that the defendant has articulated a legitimate, non-discriminatory reason for discharging the plaintiff.

The plaintiff continues to bear the ultimate burden of persuading the trier of fact that he was discharged because of his race and not for the legitimate reasons offered by the defendant. A determination by the trier of fact that defendant's proffered reasons merely constitute a pretext for firing the plaintiff will permit, but not require, the trier of fact to infer that plaintiff was fired on account of his race. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ As mentioned above, the only example of racial harassment cited by the plaintiff is the incident involving Officer Ghormley. It is upon this incident that rests both plaintiff's harassment claim and his argument that he was fired because he is black. The Court will assume, *arguendo*, that the incident took place as described by the plaintiff, *i.e.*, that the term "street nigger" was used by Officer Ghormley instead of "street thug." The Court will further assume that there is no possible context in which the term could be used without it being perceived as a racial slur. Nevertheless, the Court concludes that this single incident, when one considers the totality of the circumstances, cannot as a matter of law support either the plaintiff's claim that he was subject to such harassment as to establish a hostile work environment or his claim that this incident is sufficiently egregious to support a finding that the reasons offered by the defendant for discharging the plaintiff were pretextual.

■ As to the racial harassment claim, "a claim of racial harassment in the workplace focuses on the pervasiveness of the racially discriminatory conduct and also the employer's possible knowledge of that conduct and failure to take remedial action." *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 672 (8th Cir.1994). "[A]n employer may be held liable only for events [of racial harassment] of which it knows or should have known, either directly or constructively, and with respect to which it fails to take corrective action...." *Jeffries v. Metro–Mark, Inc.*, 45 F.3d 258, 259 (8th Cir.1995). Furthermore, the existence of a hostile work environment cannot be predicated upon isolated acts. It is not true that "an employer's mere utterance of an ethnic or racial epithet which engenders offensive feelings in an em-

ployee falls within the proscription of [Title VII]," *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971), [*cited with approval in Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (involving sexual harassment) ]. By plaintiff's own admission, this was allegedly the only act of racial harassment directed toward the plaintiff. No other probationary officers observed acts of harassment directed either to plaintiff or other racial minorities. When supervisors were made aware of the incident, they acted promptly and responsibly based on the facts as were available. Officer Ghormley was advised that remarks such as described by the plaintiff were not appropriate and would not be tolerated.

Plaintiff has not met the burden placed upon him by Rule 56 of the Federal Rules of Civil Procedure and applicable caselaw to put forth sufficient facts which, if believed by the trier of fact, would support his claim of a hostile work place.

Similarly, as to the claim of illegal discharge, when all of the facts are considered, the proof of the incident in question would not support a finding that the reasons offered by the defendant for firing the plaintiff are pretextual. The plaintiff was hired as part of a concerted effort on the part of the City to hire more black officers. Half of plaintiff's class was black. The deposition testimony of the other black members of plaintiff's class of recruits reveals without exception that they each believed that plaintiff was not treated differently on account of his race. It makes no sense to believe that the defendant desired to fire plaintiff because he was black.

Because the Court concludes that a finding that Officer Ghormley used a racial slur on one occasion would, when one considers all of the evidence, not be sufficient to support a finding that the reasons offered by the defendant are pretextual, the Court holds that defendant is entitled to summary judgment as a matter of law. The motion is granted.

IT IS SO ORDERED.